IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JUSTIN WAYNE HAISTEN, | § | |
|     PETITIONER, | § | |
| | § | |
| V. | § | CASE NO. 3:20-CV-694-C-BK |
| | § | |
| DIRECTOR, TDCJ-CID, | § | |
|     RESPONDENT. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order* 3, Petitioner Justin Wayne Haisten's *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 was referred to the United States Magistrate Judge for case management, including the issuance of findings and a recommended disposition where appropriate. Doc. 3, Doc. 4. Upon review, the petition should be **DENIED**.

**I. BACKGROUND**

In 2017, a jury convicted Haisten, a Texas prisoner, of two counts of aggravated sexual assault of a child under the age of six and two counts of indecency with a child by exposure and assessed punishment at life imprisonment for each count of aggravated sexual assault and twenty years for each count of indecency with a child, with the sentences to be served consecutively. *State v. Haisten*, No. F-49955 (18th Jud. Dist. Ct., Johnson Cnty., Tex. 2013); Doc. 14-30 at 12-17. The Tenth Court of Appeals affirmed that judgment. *Haisten v. State*, No. 10-17-00025-CR, 2017 WL 6374806 (Tex. App.—Waco, 2017). The Texas Court of Criminal Appeals (TCCA) denied Haisten's petition for discretionary review on April 18, 2018. *Haisten v. State*, PDR No. 024-18; Doc. 3 at 3.

On May 6, 2019, Haisten filed a state application for writ of habeas corpus. *See* Doc. 14-30 at 117. The TCCA denied the application without written order on November 27, 2019. *Ex parte Haisten*, WR-90,443-01 (Tex. Crim. App. Nov. 27, 2019). On December 6, 2019, Haisten filed a motion for reconsideration, which the TCCA denied on January 9, 2020. *See* Doc. 14-26. Haisten then placed this federal habeas application into the prison mail system for filing on March 13, 2020. *See* Doc. 3 at 13.

## II.    ANALYSIS

### A.  One-Year Statute of Limitations and Statutory Tolling

The State contends that Haisten's petition is untimely. *See* Doc. 13 at 6-9. The Court disagrees.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes a one-year statute of limitations for state inmates seeking federal habeas corpus relief. 28 U.S.C. § 2244(d). The AEDPA offers various trigger dates for the statute of limitations, but a state prisoner ordinarily has one year to file a federal habeas petition, counting from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[1] Convictions become final for purposes of 28 U.S.C. § 2244(d)(1)(A) when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for writ of certiorari has elapsed or a timely filed petition has been denied. *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir. 2003). But "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under [28 U.S.C. § 2244(d)]." 28 U.S.C. § 2244(d)(2).

---

[1] The provisions of subsections (B) through (D) of § 2244(d)(1) are inapplicable to this case. *Id.*

The relevant dates are undisputed. The Tenth Court of Appeals affirmed Haisten's conviction on May 18, 2017, and on April 18, 2018, the TCCA denied Haisten's petition for discretionary review. *Haisten*, 2017 WL 6374806; Doc. 3 at 3. Thus, Haisten's conviction became final on July 17, 2018 when the time for filing a petition for certiorari with the United States Supreme Court expired. *See* SUP. CT. R. 13.1 (petition for writ of certiorari is timely filed 90 days after entry of judgment). Haisten filed a state habeas application on May 6, 2019, which was denied on November 27, 2019. *Ex parte Haisten*, WR-90,443-01 (Tex. Crim. App. Nov. 27, 2019).

The State contends that Haisten's petition was tolled for 205 days under 28 U.S.C. § 2244(d)(2), leaving him with seventy-two days from November 27, 2019 to file a federal habeas petition. Doc. 13 at 8. The State thus calculates Haisten's deadline to file a federal habeas application as February 7, 2020, which Haisten missed by over a month. Doc. 13 at 8.

However, as Haisten correctly notes, he filed his motion for reconsideration in the state habeas court on December 6, 2019, which was denied on January 9, 2020. Doc. 17 at 2. Under circuit authority, the statute of limitations remains tolled under 28 U.S.C. § 2244(d)(2) during the period between the TCCA's denial of a state habeas petition and its denial of a properly-filed motion for reconsideration. *See, e.g.*, *Harris v. Quarterman*, No. 4:07-CV-464-A, 2007 WL 4258319, at *3 (N.D. Tex. Dec. 4, 2007) ("…the Fifth Circuit has held that a properly filed motion for rehearing or reconsideration in a state habeas case tolls the running of the federal limitations period from the date the state habeas application was denied to the date the letter denying the motion is issued by the Texas Court of Criminal Appeals.") (citing *Lookingbill v. Cockrell*, 293 F.3d 256, 260-61 (5th Cir. 2001); *Emerson v. Johnson*, 243 F.3d 931, 932 (5th Cir. 2001)). The tolled period also includes the time between the denial of the state habeas

3

application and the timely filing of the motion to reconsider. *Lookingbill*, 293 F.3d at 261. Thus, in Haisten's case, the statute of limitations was tolled until January 9, 2020, leaving Haisten with 72 days from that date to file his federal habeas application, which he met.

Haisten averred in his federal petition that it was placed in the prison mailing system on March 13, 2020—63 days after the denial of his motion for reconsideration. Thus, under the prisoner "mailbox rule," the petition is timely. *See Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert denied*, 529 U.S. 1057 (2000); *Gray v. Thaler*, No. 3:09-CV-0304-O, 2009 WL 3614458, at *3 (N.D. Tex. Oct. 30, 2009) ("Under the prison mailbox rule, the date an inmate places a legal document in the prison mail system for submission to a federal court is deemed the date he filed such document.") (other citations omitted).

Albeit timely, Haisten's petition nevertheless lacks merit and should be denied.

### B. Standard of Review

A petitioner is not entitled to federal habeas corpus relief unless the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The petitioner bears the burden of establishing that he is entitled to relief. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). However, that burden is "difficult to meet," *Harrington v. Richter*, 562 U.S. 86, 102, 105 (2011), because the state court's decision is reviewed under a "highly deferential" standard and afforded the "benefit of the doubt." *Woodford*, 537 U.S. at 24 (citation and internal quotation marks omitted). Section 2254(d) "was meant to stop just short of

imposing a complete bar to federal court relitigation of claims already rejected in state court proceedings, allowing for federal habeas relief only where there have been 'extreme malfunctions in the state criminal justice systems.'" *Wilson v. Cain*, 641 F.3d 96, 100 (5th Cir. 2011) (quoting *Richter* 562 U.S. at 102). Consequently, as long as "'fairminded jurists could disagree' on the correctness of the state court's decision," federal habeas relief should not be granted. *Richter*, 562 U.S. at 102 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Explained differently, "even if the federal court disagrees with the state court ruling, the federal court should not grant habeas relief unless the state court ruling was objectively unreasonable." *Wilson*, 641 F.3d at 100; *see Richter*, 562 U.S. at 101 ("an unreasonable application of federal law is different from an *incorrect* application of federal law") (quotations and quoted cases omitted; emphasis in original).

In addition, the Court reviews claims of ineffective assistance of counsel under a "doubly deferential" standard, taking "a 'highly deferential' look at counsel's performance, under *Strickland v. Washington*, 466 U.S. 668, 689 (1984), "'through the 'deferential lens of § 2254(d).'" *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (citations omitted). Considering the deference afforded by Section 2254(d)(1), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101.

To establish ineffective assistance of trial counsel, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 668, 687. The Court need not address both components if the petitioner makes an insufficient showing on one. *Id.* at 697. To establish deficient performance, a petitioner must show that his attorney's actions "fell below an objective standard of reasonableness." *Id.* at 689. In evaluating an attorney's performance, there is a "strong presumption that counsel's conduct

falls within the wide range of reasonable professional assistance," or that "under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Under *Strickland's* prejudice prong, a petitioner additionally must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

### C. Haisten's Ineffective Assistance Claims fail

Haisten asserts that his trial attorneys rendered ineffective assistance in failing to (1) secure and present expert testimony on the influence of repeated questions, interviewer bias, and the suggestibility young children; (2) move for a mistrial and thoroughly review his recorded police interview; (3) object to the use of a puppy during the child victim's testimony; and (4) object to witness coaching from the gallery. Doc. 3 at 6-14; Doc. 4 at 1-13.

#### *i. Failure to secure and present expert testimony*

To show counsel was ineffective for failing to secure and present expert testimony, the petitioner must "name the witness, demonstrate that the witness was available to testify and would have done so, set out the contents of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 1999). Haisten provided the TCCA with articles on the questioning of child witnesses but failed to identify a specific expert witness that his trial attorneys should have called; nor did he submit affidavits or other evidence that the expert witness would have been willing to testify on his behalf and that their testimony would have been favorable. Thus, the TCCA did not unreasonably apply *Strickland* in rejecting Haisten's first IAC ground for relief. *See, e.g., Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010) (rejecting a failure-to-present-expert-testimony IAC claim because there was no evidence that the expert was available to

6

testify at the original trial and would have done so); *Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001) (rejecting IAC claim where the petitioner did not provide "any court with affidavits (or similar matter) from any of the unidentified favorable witnesses suggesting what they would have testified to"); *Goodrich v. Director*, CIVIL ACTION NO. 9:13cv133, 2016 WL 4443208, at *9 (E.D. Tex. July 21, 2016), *rec. accepted*, 2016 WL 4418772, (E.D. Tex. Aug 19, 2016) (rejecting failure-to-find-and-present-expert-witness IAC claim because petitioner, *inter alia*, did "no more than speculate that experts in the fields he describes would have provided favorable testimony") (footnote omitted).

Further, "complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) (citations omitted). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) (citing *Fitzgerald v. Estelle*, 505 F.2d 1334 (5th Cir. 1975); *Daniels v. Maggio*, 669 F.2d 1075 (5th Cir. 1982)).

Here, Haisten's trial attorneys submitted lengthy affidavits detailing their trial strategy related to expert testimony, which the TCCA, in rejecting Haisten's IAC claims, implicitly credited. Haisten's lead counsel explained:

> My trial strategy was to cast doubt on [the victim's] testimony by actual facts and evidence, rather than in theoretical possibilities and scientific studies. [the victim's] claims were both physically and medically unlikely, the details varied considerably in each retelling, and the fact that she was relentlessly questioned in a suggestive manner was readily apparent from witness testimony. An expert would not have aided the jury to "understand the evidence or to determine a fact in issue" in this case, as required by Rule 702 of the Texas Rules of Evidence.

> \*\*\*
>
> My trial strategy was to use…inconsistencies to impair [the victim's] credibility. I also relied heavily on it being extraordinarily unlikely that [Haisten] was sexually abusing his daughter on multiple occasions while his wife slept in the bed inches from both of them. An expert would not have added to that credibility impeachment strategy.
>
> \*\*\*
>
> It was trial strategy to contrast the fact that [Haisten] has herpes while [the victim] does not to damage the credibility and reliability of [the victim's] testimony. An expert would not have furthered this strategy.
>
> I communicated the concept of "repeated questions, interviewer bias, and suggestibility in young children" from examples I used to question the panel in *voir dire*, from the forensic interviewer's testimony and admissions, and provided concrete examples of such testimony from the State's outcry witness, [Haisten's mother], and from defense witness [Haisten's sister]. In *voir dire*, I discussed the suggestibility of young children using Santa Claus as an example.
>
> \*\*\*
>
> In cross examination, [the forensic interviewer of the victim] conceded that "yes" or "no" questions can be suggestive to young children, and repeating "yes" or "no" questions might give a child the impression that their first answer was wrong. (Doc. 14-11 at 177-179). [The forensic interviewer] also agreed that positive affirmations, like "Good job" or "Brave girl" could not only be suggestive to young children but would also be examples of interview bias. (Doc. 14-11 at 181-182). She confirmed that interviewer bias is "when someone who is already reached a conclusion about what they think has happened to the child and their questions of the child are designed to get information to back up that conclusion…" (Doc. 14-11 at 181-182).
>
> I knew from my investigation of the case prior to trial that I would be able to show the jury concrete evidence of how [the victim] might have been manipulated into making a false outcry, the details of which made its veracity especially unlikely. I determined that expert testimony would not aid the jury in drawing that conclusion, as the evidence was not especially technical and well within the grasp of laypeople.

Doc. 14-34 at 57-60.

Haisten's trial attorneys determined that concepts of child suggestiveness, interview bias, and repeated questions were easily understood by laypeople and sought to develop those concepts through avenues other than expert testimony, such as cross examination of the forensic

8

investigator and the outcry witness, as well as voir dire inquires. *See* Doc. 14-9 at 161 (voir dire inquiry); Doc. 14-10 at 94-131 (cross examination of the victim's grandmother, the outcry witness); Doc. 14-11 at 170-195 (cross examination of forensic interviewer). Counsel's strategy was not "so ill chosen that it permeates the entire trial with obvious unfairness." *Garland*, 717 F.2d at 206; *see also Schutz v. State*, 957 S.W.2d 52, 69, 71 (Tex. Crim. App. 1997) (noting that "while expert testimony may be relevant, whether a child has in fact been manipulated also involves matters within the knowledge of laypersons;" and "the jury is just as capable as the expert of drawing the conclusions involved").

The TCCA did not unreasonably apply *Strickland* in rejecting Haisten's first IAC ground for relief.

### ii. Failure to Move for a Mistrial and Failure to Review Recorded Interview

In his second IAC ground for relief, Haisten claims that his trial attorneys were ineffective for failing to move for a mistrial after an inadvertent "breach" of a motion *in limine*. Doc. 4 at 4. By way of background, the trial court granted Haisten's motion *in limine* to preclude the jury from hearing a detective's conclusion in a recorded interview that "since you were a victim of abuse and your brother…was a victim of abuse he's more likely to offend." Doc. 14-23 at 79; Doc. 14-11 at 147. And Haisten's trial attorneys repeated this objection again at trial, where it was again sustained. *See* Doc. 14-11 at 147. Haisten's trial attorneys also obtained a jury instruction that the jury was to "disregard statements regarding circle of abuse or predictions of future abuse and you shall not consider for any purpose." Doc. 14-11 at 161. The parties, however, missed a reference to a "circle of abuse" in their review of the tape, and so the jury inadvertently heard it.

9

"It is oft recognized that the decision not to seek a mistrial is frequently a strategic one." *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008) (citing *Ward v. Dretke*, 420 F.3d 479, 491 (5th Cir. 2005) ("In deciding whether to seek a mistrial, [counsel] was required to balance the harm caused by the prosecutor's improper question against the legitimate possibility that a new trial would present less propitious prospects for this client.").

Haisten's attorneys each offered affidavits to the TCCA explaining their strategy in not seeking a mistrial. Lead counsel explained that the rampant sexual abuse in Haisten's family was not a prohibited topic, but rather a "vital component of our trial strategy and had been presented to the jury in several ways by the time the State sought to admit the taped interview between [Haisten] and [the detective]." Doc. 14-34 at 62. She also explained that she instead sought to prevent the jury hearing a non-scientific "conclusion" from a layperson, [the detective], who would have had the patina of expertise regarding the likelihood of an abused person becoming an abuser themselves." Doc. 14-34 at 62-63. Further, "[a]t this point in the trial, the jury had already heard testimony from [Haisten's mother] about [Haisten's] history of being abused and in turn abusing his brother. The abuse that went on in the family for decades was crucial to establishing why [Haisten's] own mother never trusted him with his children. The information was already before the jury." Doc. 14-34 at 62-63. She further explained that she did not believe that moving for a mistrial was a good idea because:

> [T]he testimony had come out almost exactly as planned from the witnesses up to that point, particularly with [Haisten's mother], who had deliberately left the false impression with the jury that she purchased expensive items for her other grandchildren, not just [the victim]. [Doc. 14-10 at 84]. I knew I would be able to show the jury concrete evidence of her character for untruthfulness and manipulation when I questioned our witness, [Haisten's sister] about who actually purchased the expensive toys. I would not be able to get such an opportunity at a second trial if a mistrial was granted. Taking those factors into account, my trial strategy was not to ask for a mistrial.

Doc. 14-34 at 62-63. Again, the Court will not second-guess counsel's strategic decision unless it is "so ill chosen that it permeates the entire trial with obvious unfairness." *Garland*, 717 F.2d at 206. Haisten has failed to make that showing.

Nor can Haisten show that he was prejudiced by his attorneys' failure to move for a mistrial. There is no indication that the trial court would have granted a mistrial, especially because an error in admitting evidence is harmless when the evidence is cumulative, as was the case here. *See U.S. v. Griffin*, 324 F.3d 330, 348 (5th Cir. 2003) ("Where objected to testimony is cumulative of other testimony that has not been objected to, the error that occurred is harmless."). And, Haisten's counsel obtained a curative instruction regarding the "circle of abuse" language, which the jury is presumed to have heeded. *See* Doc. 14-11 at 147; *Richardson v. Marsh*, 481 U.S. 200, 211 (1987) (observing that "juries are presumed to follow their instructions").

The state habeas court did not unreasonably apply *Strickland* in rejecting Haisten's second IAC ground for relief.

### *iii. Failure to Object to Puppy*

Haisten next claims that his attorneys should have objected to the victim's use of a puppy during her testimony pursuant to Texas Code of Criminal Procedure article 38.074.[2] Doc. 4 at

---

[2] That article provides in pertinent part:

> On the motion of any party, or a parent, managing conservator, guardian, or guardian ad litem of a child or special advocate for a child, the court shall allow the child to have a toy, blanket, or similar comforting item in the child's possession while testifying or allow a support person to be present in close proximity to the child during the child's testimony if the court finds by a preponderance of the evidence that:
>
> > (1) the child cannot reliably testify without the possession of the item or presence of the support person, as applicable; and

11

10. The Court finds, however, that the TCCA could have reasonably concluded—as Haisten's attorneys argued in their affidavits—that any objection under article 38.074 would have been meritless, and counsel is not required to make futile objections. *See* Doc. 14-34 at 64-66, 80-82; *see also Emery v. Johnson*, 139 F.3d 181, 198 (5th Cir. 1997) (noting that counsel is not required to make futile objections).

Texas courts have held service dogs are "comforting items" under article 38.074. *See Lambeth v. State*, 523 S.W.3d 244, 247 (Tex. App.—Beaumont, 2017 no pet.). And although article 38.074 requires the trial court to make findings of fact, these findings of fact can be inferred from the trial court's comments and oral findings. *See id.* Here, a reasonable attorney could have concluded that the trial court implicitly found that the State satisfied article 38.074. The trial court used the puppy to establish the victim's competency and reliability to testify, implicitly finding that "the child cannot reliably testify without the possession of the item or presence of the support person":

> Court: So if I told you that "Sophie" is—her hair—her fur is black, would that be a truth or would that be a lie?
>
> Court: Why would that be a lie?
>
> The Witness: Because she has white and gray.

Doc. 14-10 at 133-134. The trial court also instructed the victim to introduce the puppy and her handler to the jury when they entered the courtroom, implicitly finding that the puppy was not likely to prejudice the trier of fact in evaluating the child's testimony. Doc. 14-10 at 137-38.

---

> (2) granting the motion is not likely to prejudice the trier of fact in evaluating the child's testimony.

Tex. Code Crim. Proc. Art. 38.074 § 3(b).

Haisten does not make a convincing showing that these implicit findings were erroneous. Haisten argues that there "was no evidence presented to suggest that she actually needed" the puppy to testify. *See* Doc. 4 at 10. But a reasonable attorney could have concluded differently because the trial court used a description of the puppy as an example to determine the victim's competency and reliability as a witness. Doc. 14-10 at 133-134. Further, Haisten's lead counsel explains in her affidavit:

> It was apparent that [the victim] actually did rely on the dog to testify reliably when the prosecutor asked her "And who has touched you on your private?" (Doc. 14-10 at 147). Her reaction to the question was emotional, not verbal, and as such impossible to transcribe, but is shown by the prosecutor's immediate rush to soothe her. "Where did Sophie go? Is Sophie still up there? There she is. Do you have Sophie and your blanket up there? No. Where is your blanket? Okay…Can you talk to me for just a few more minutes and then I will be done?" (Doc. 14-10 at 148).

Doc. 14-24 at 65. Again, the TCCA implicitly credited counsel's observation.

Haisten also argues that the puppy's presence encouraged the victim to answer the State's questions through "social compliance rather than actual memory recall—the equivalent to the State giving her candy every time she answered 'correctly.'" Doc. 4 at 10. But this argument is undermined by the Texas courts' sanction of the use of service dogs as comfort objects. Haisten's argument that the puppy distracted the victim and the jury and was thus prejudicial, Doc. 4 at 10, likewise fails since there is no indication in the trial transcript that the puppy caused a distraction.

At bottom, consistent with their affidavits, Haisten's trial attorneys could have reasonably concluded that any objection to the puppy was meritless. They also could have determined that objecting to the service dog was bad strategy, at least if done in front of the jury, because it might have looked like an attack on the victim. *See*, *e.g.*, *Jackson v. Davis*, No. 4:16-CV-128-A, 2017 WL 4221078, at *3 (N.D. Tex. Sept. 21, 2017) ("Strategic decisions by counsel are

virtually unchallengeable and generally do not provide a basis for habeas-corpus relief on the grounds of ineffective assistance of counsel.")

The state habeas court's rejection of this IAC ground for relief was not an unreasonable application of *Strickland*.

### *iv. Failure to object to witness coaching*

In his final IAC ground for relief, Haisten claims that his trial attorneys should have objected to witness coaching. Doc. 4 at 5. The facts supporting this claim were controverted before the TCCA. Haisten's grandmother submitted an affidavit in which she stated that she noticed two men—the victim's uncle and the boyfriend of the victim's grandmother—nodding "yes" and "no" to the victim for ten minutes from the gallery while the victim was testifying. *See* Doc. 14-34 at 21. After ten minutes or so, co-counsel brought it to the judge's attention, who stated that he "has not been watching the gallery but would keep an eye on it." *See* Doc. 14-34 at 21.

Co-counsel for Haisten, who observed the gallery during lead counsel's cross examination, stated that he saw the two men in the gallery but did not notice them "coaching" the victim. Doc. 14-34 at 83. At one point, during lead counsel's cross examination, he saw one of the men seemingly nod his head to the victim, indicating an affirmation, but the victim answered the question to which the nod might have been directed in the negative. Doc. 14-34 at 84. After noticing this apparent nod, co-counsel instigated a brief bench conference to deal with the issue. Doc. 14-34 at 84. The judge said that he did not see the behavior but would watch for it going forward. Doc. 14-34 at 84. The State admonished the men in the gallery, which ended the potentially problematic behavior. Doc. 14-34 at 86. Co-counsel further stated that, had the

14

behavior been ongoing for a prolonged period of time like Haisten's grandmother suggests, he would have brought the matter to the attention of the court much sooner. Doc. 14-34 at 84.

In rejecting this IAC claim, the state habeas court implicitly found the relevant content of co-counsel's affidavit credible. *See, e.g., Amero v. Director*, 2:19-CV-195-Z-BR, 2021 WL 4393154, at *7 (N.D. Tex. Aug. 24, 2021), *rec. accepted*, 2021 WL 4391647 (N.D. Tex. Sept. 24, 2021) (concluding that the TCCA implicitly found counsel's affidavit credible in comparison to other controverting evidence). This implied finding of fact is entitled to deference from this Court and is presumed to be correct. Haisten presents nothing to disturb that presumption.

Under co-counsel's version of events, Haisten's attorneys were not ineffective in failing to move for a mistrial. A reasonable attorney in co-counsel's position could have concluded that there was no witness coaching and that the matter did not warrant further investigation, after the spectator's apparent nod was brought to the trial court's attention. Haisten has not shown that the state habeas court unreasonably applied *Strickland* in rejecting his failure-to-object-to-coaching claim, and his fourth IAC ground for relief should be denied.

### III.   CONCLUSION

For the foregoing reasons, Haisten's petition for a writ of habeas corpus should be **DENIED**, and this case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on February 9, 2022.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute,* 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).